IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 CR 32-1 |
| | ) | Judge John F. Kness |
| ANDREW VESELY, | ) | |
| Defendant. | ) | |

## <u>ANDREW VESELY'S SENTENCING MEMORANDUM</u>

ANDREW VESELY, by the FEDERAL DEFENDER PROGRAM and its attorney, IMANI CHIPHE, respectfully requests that this Court sentence him to thirty-six months of custody and three years of supervised release.

## INTRODUCTION

The Pre-Sentence Investigation Report (PSR) concludes that Mr. Vesely's offense level is 20 with a criminal history category of VI which yields an advisory guideline range is 70 to 87 months.

Considering the factors outlined in 18 U.S.C. § 3553(a), a sentence of 36 months of community with a substantial term of supervised release is the right, just, and reasonable sentence in this case.

1

The question before the court is which combination of sentencing conditions is sufficient, but no more than necessary, to meet the statutory sentencing objectives in this case. In this case, Mr. Vesely's acceptance of responsibility, age, history, characteristics, lack of parental involvement during his childhood, and poverty support a thirty-six-month sentence.

Without reservation or equivocation, Mr. Vesely accepts responsibility for his actions. However, he asks the Court to give strong consideration to his age at the time he committed the offense and at the time of his previous convictions. Mr. Vesely was between 20 and 22 years old when he committed the offenses that make up his criminal history. See U.S.S.G. §5H1.1 (highlighting that adverse childhood experiences, environment, and family relationships can influence a young person's development and contribute to their involvement in the criminal justice system). Dkt #54 (*Andrew Vesely Social History Report*). Early on, after his arrest in this case, Mr. Vesely became reflective -- and after taking a sober look at his actions, he has eagerly decided to improve himself, become a productive member of society, and be a good example for his daughters, family, and friends. Considering these facts, Mr. Vesely requests a sentence of thirty-six months' confinement. The requested sentence is a fair and appropriate punishment for this defendant, in light of these specific facts in this specific case.

I.      **The Factors Enumerated in 18 U.S.C. 3553(a) of the Sentencing Reform Act Weigh in Favor of a Sentence of Community Confinement.**

A.      **Mr. Vesely's history and characteristics[1]**

Mr. Vesely was born in Chicago, Illinois, and raised in Chicago and Rosedale, Illinois. His parents, Dawn Vesely and Anthony Gomez, were teenagers when Mr. Vesely was born. Dawn and Anthony both abused drugs and alcohol during Mr. Vesely's childhood. In addition to the addictions, Anthony physically abused Dawn while they were together. See Dkt. #54. The domestic violence inflicted upon her led Dawn to leave the family. They separated when Mr. Vesely was approximately 5 years old. After his parents separated, Andrew was raised by his father and paternal grandparents. He grew up primarily with his father, grandparents, and three brothers.

Much of Andrew's life has been marked by instability, chaos, and dysfunction. See Dkt. #54. His father struggled with alcohol and drug addiction during his childhood. He described witnessing his father's addiction as difficult and indicated that other family members had to step in to help care for them.

Mr. Vesely's childhood was difficult because of limited resources and a

---

1      A fuller look at Mr. Vesely's history and characteristics can be found in his Social History Report. *See Dkt. #54.*

challenging environment. Andrew recalled going to bed hungry, unable to eat more than a small, rationed portion of whatever was prepared for dinner that night. Most of his food came from school breakfast and lunch, though it was hardly enough. Andrew and his brothers began stealing snacks and other food from gas stations and grocery stores to supplement what they weren't receiving at home. See Dkt. #54.

Mr. Vesely's mother's abandonment left a permanent mark on him, and the feelings of desertion and sorrow followed him for the rest of his life. Dawn did not try to spend time with the boys regularly. Instead, she would move in with boyfriend after boyfriend, all over the city. When Andrew and his brothers saw their mother, it was typically during holidays when the extended Vesely family would get together. Occasionally, Andrew and his brothers would spend a weekend with Dawn, but those occasions were few and far between. Even then, she was typically high on Vicodin or Xanax, which contributed to the already growing emotional distance between her and them. Andrew remembered that even during their infrequent weekends together, she would be in one room on her phone or watching TV while he and his brothers would play video games in another room. See Dkt. #54.

Mr. Vesely's main goal for the future is to be a good father and role model for his children, Avianne and Elainate. His daughter Avianne, who is six years old, lives with Mr. Vesely's aunt, Mallory Vesely, who is Avianne's legal guardian. Elainate is five years old and lives in Wisconsin with her mother, Mr. Vesely's former partner. Mr. Vesely has a good relationship with his daughters and their guardians.

**B.      Mr. Vesely was a "youthful offender" when he committed the instant offense and obtained his criminal history.**

The Supreme Court states that "youth matters in sentencing." *Jones v. Mississippi*, 593 U.S. 98, 141 S.Ct. 1307, 1314, 209 L.Ed.2d 390 (2021). In April 2024, the United States Sentencing Commission approved an amendment to the federal sentencing guidelines, which became effective on November 1, 2024, for youthful individuals. It reads:

> §5H1.1 (Age (Policy Statement) A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or *prior offenses*. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

§5H1.1 came about after extensive investigation into the evolving research on the youthful brain. Specifically:

> The Commission received testimony and comment from experts in the science and data community conveying advancements in the understanding of youthful development and sentencing, including recognition of the age-crime curve and that cognitive changes lasting into the mid-20s affect individual behavior and culpability.
>
> The Commission has a statutory responsibility under 28 U.S.C. § 991(b)(1)(C) to establish and amend sentencing policies to reflect such "advancement in knowledge of human behavior as it relates to the criminal justice process."

(https://www.ussc.gov/topic/amendments-brief, 2024 Amendments In Brief)

In fact, before the amendment, an extensive study was put out by the United States Sentencing Commission in 2017, titled "Youthful Offenders in the Federal System." As part of that study, the Commission recognized that the prefrontal cortex is the part of the brain utilized in impulse control, emotional reactions, executive decisions, and decision making, and the last part of the brain to develop. *See* United States Sentencing Commission, *Youthful Offenders in the Federal System* (May 26, 2017), https://www.ussc.gov/research/research-reports/youthful-offenders-federal-system. During adolescence and into young adulthood, this part of our brain goes through processes known as synaptic pruning and myelination. *Id.* Simply put, these processes do not generally reach completion until humans

6

enter their mid-20's, and people at different stages of these processes have different brain structures and functioning compared to fully functional adults. *Id.* The use of marijuana and alcohol can further compound this process. *Id.* While guarding against over-generalization, the Commission concluded that the results of many recent studies "indicated clear differences in the ways the frontal lobe was used in decision making" for minors and young adults. *Id.* at 7.

Because the development of brain systems that regulate impulse control is protracted, continuing into the early twenties, a period of vulnerability to risky behavior results:

> As some writers have described it, adolescence is a time when the "accelerator" is pressed to the floor, but a good "braking system" is not yet in place." From this perspective, the relatively high rate of risky activity observed in late adolescence and young adulthood-including criminal offending - is likely due to a combination of high reward seeking and poor self-control, leading individuals to make impetuous, short-sighted decisions that privilege the potential rewards of risky choices and underestimate the potential costs. According to this view, risk-taking declines as individuals develop more mature judgment, as a result of a decrease in reward seeking, an increase in self-control, or both. Importantly, these developmental changes, which continue into the early twenties, are now viewed as normative, driven by processes of brain maturation that are not under the control of young people.

7

Symposium: *Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 Fordham L. Rev. 641 at 647, November 2016.

Young adults also remain highly susceptible to peer pressure. *See* Melissa S. Caulum, *Postadolescent Brain Development: A Disconnect Between Neuroscience Emerging Adults, and the Corrections System,* 2007 Wrs. L. Rev. 729, 731-32 (2007) citing Craig M. Bennett & Abigail A. Baird, *Anatomical Changes in Emerging Adult Brain: A Voxel-Based Morphometry Study,* 27 Hum. Brain Mapping 766, 766-67 (2006), "When a highly impressionable emerging adult is placed in a social environment composed of adult offenders, this environment may affect the individual's future behavior and structural brain development." The presence of peers has been shown to double risk-taking among adolescents, increasing it by fifty percent among young adults, but having no effect on older adults. Laurence Steinberg, *A Social Neuroscience Perspective on Adolescent Risk-Taking,* 28 Developmental Rev. 78, 91 (2008).

These principles have been recognized by courts across the country, at both the state and federal level, and chief among them of course being the Supreme Court itself. *See e.g., Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("[b]ecause juveniles have diminished culpability and greater prospects for

reform, we explained, "they are less deserving of the most severe punishments") quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Roper v. Simmons*, 543 U.S. 551, 570 (2005) (acknowledging, *inter alia*, that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults," and it remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed").

Viewing Mr. Vesely's criminal history through the lens of youthful offender research, which places him in category VI, reveals the significance of this mitigating factor in his case. Mr. Vesely was between 20 and 22 years old when he committed all the offenses that make up his criminal history. See PSR at 12-17.

### C. A sentence of thirty-six months confinement is the appropriate sentence in this case.

As the Court knows, a criminal sentence should seek to solve the problems caused by the crime productively. Criminal behavior presents a problem for the victim(s), the court that must decide the resolution, the person who committed

9

the crime, and, most of all, the community in which the crime was committed.

Imposing the requested sentence in this case, followed by three years supervised release with conditions, would be a sentence that is sufficient, but not greater than necessary, given the various purposes of sentencing this Court must consider in Mr. Vesely's case. Section 3553(a)(2) reflects the general sentencing purposes of incapacitation (*see, e.g.,* 18 U.S.C. § 3553(a)(2)(A)), retribution (*see* 18 U.S.C. § 3553(a)(2)(A)), deterrence (both general and specific) (*see* 18 U.S.C. § 3553(a)(2)(B) & (C)), and rehabilitation (*see* 18 U.S.C. § 3553(a)(2)(D)). In this case, these sentencing purposes would not be neglected in the least with the recommended below-guidelines sentence.

First, the proposed sentence will sufficiently address any needs Mr. Vesely may have for rehabilitation. However, the most effective corrective treatment for these issues would not be offered to Mr. Vesely while incarcerated in the Bureau of Prisons. Mr. Vesely will be able to address these issues most effectively while in community confinement and on supervised release. Conditions of the supervised release include substance abuse treatment, counseling if needed, and community service. Next, the proposed sentence is more than enough to assure the Court of Mr. Vesely's specific deterrence from future misconduct. See 18 U.S.C. § 3553(a)(2)(C). Mr. Vesely is remorseful for his offense, and he has

10

learned his lesson and will never do anything again to violate the laws of the United States.

Though he certainly made the wrong choice in violating the law, Mr. Vesely looks forward to showing that he can make the right choices. In short, Mr. Vesely's proposed sentence satisfies the sentencing objectives of rehabilitation and specific deterrence.

What remains to be accomplished with Mr. Vesely's sentence is achieving the general deterrence and retribution goals. As for deterring others generally, the proposed sentence can accomplish that aim, especially when the certainty of a conviction for a federal felony can have a significant deterrent effect on others. Such a conviction results in a considerable loss of liberty, valuable civil rights, and societal benefits such as job opportunities. It would send the message to others in the community, and Mr. Vesely, that not respecting the law is the sure way to lose a portion of one's freedom to function in the society the laws were designed to protect. But it would also show that a person's mistakes, even serious mistakes, don't define them and that with hard work and opportunity, people can become productive members of society.

In addition, Section 3553(a) requires the Court to consider all *types* of sentences available. 18 U.S.C. § 3553(a)(3). Courts should consider whether other,

11

less costly types of sentences can accomplish the sentencing objectives of the Sentencing Reform Act. An advisory from the Administrative Office indicates that the annual cost to incarcerate persons in federal custody is nearly $26,000. By contrast, the yearly cost of supervised release is approximately $3,700. With special conditions of supervised release available as an effective means of punishment in Mr. Vesely's case, the requested sentence would achieve the statutory sentencing aims.

To be sure, Mr. Vesely is not suggesting that the below guidelines sentence minimizes the crime he committed. It is significant and when combined with supervised release it is a just sentence. While on supervised release, Mr. Vesely will remain under the watchful eye of the probation office and this Court. He will also be reminded of his wrongdoing with every hour he spends on supervision. Ultimately, every hour he spends on supervised release, reporting to a probation officer, and serving in the community will reinforce the seriousness of what he has done while making it even more confident that this Court will never see Mr. Vesely again. In addition, the consequences for a misstep while on supervised release are no less severe. If Mr. Vesely violates the terms of supervised release, this Court can revoke his release and incarcerate him.

## II.    CONCLUSION

Andrew Vesely has accepted responsibility for his actions in this matter. Because of his age, history, and characteristics, a sentence of 36 months of confinement coupled with three years of supervised release is sufficient and the appropriate sentence in this case. A sentence of prolonged incarceration, on the other hand, is greater than necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).

THEREFORE, Mr. Vesely requests that this Court sentence him to a term of 36 months of imprisonment along with three years of supervised release pursuant to 18 U.S.C. §3553(a).

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By:    s/*Imani Chiphe*
       Imani Chiphe
       Attorney for Andrew Vesely

IMANI CHIPHE
Federal Defender Program
55 East Monroe, Suite 2800
Chicago, IL 60603

13

## CERTIFICATE OF SERVICE

The undersigned, Imani Chiphe, an attorney with the Federal Defender Program hereby certifies that in accordance with FED. R.CIV.P5,LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents(s):

## ANDREW VESELY'S SENTENCING MEMORANDUM

Was served pursuant to the district court's ECF system as to ECF filing, if any, and were sent by first- class mail/ hand delivery on February 10, 2026 to counsel/ parties that are non-ECF filers.

By:  s/ *Imani Chiphe*  
Imani Chiphe  
FEDERAL DEFENDER PROGRAM  
55 E. Monroe St., Suite 2800  
Chicago, Illinois 60603  
(312) 621-8300